**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| CASIO COMPUTER CO., LTD., | ) | |
| | ) | Case No. 23-cv-0895 |
| Plaintiff, | ) | |
| v. | ) | Judge Thomas M. Durkin |
| | ) | |
| THE INDIVIDUALS, CORPORATIONS, | ) | |
| LIMITED LIABILITY COMPANIES, | ) | |
| PARTNERSHIPS AND UNINCORPORATED | ) | |
| ASSOCIATIONS IDENTIFIED | ) | |
| ON SCHEDULE A HERETO, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S *EX PARTE* MOTION FOR ENTRY OF
A TEMPORARY RESTRAINING ORDER INCLUDING A TEMPORARY INJUNCTION, <u>A
TEMPORARY ASSET RESTRAINT AND EXPEDITED DISCOVERY</u>**

Plaintiff CASIO COMPUTER CO., LTD. submits this Memorandum in support of its *Ex Parte* Motion for Entry of a Temporary Restraining Order, including a temporary injunction, a temporary asset restraint, and expedited discovery (the "*Ex Parte* Motion").

**TABLE OF CONTENTS**

I.    INTRODUCTION AND SUMMARY OF ARGUMENT ..................................................1

II.   STATEMENT OF FACTS.................................................................................................3

    A. PLAINTIFF'S DESIGN AND PRODUCTS ................................................................3

    B. DEFENDANTS' UNLAWFUL ACTIVITIES ...............................................................4

       *i.*   *Defendants Operate Legitimate-Looking Internet Stores*.................................5

       *ii.*  *Defendants Illegitimately Optimize the Defendants' Internet Stores for Search Engines* 5

       *iii. Defendants Use Fictitious Aliases and Common Tactics to Evade Shut Down* .............6

III.  ARGUMENT ....................................................................................................................8

    A. THIS COURT MAY EXERCISE PERSONAL JURISDICTION OVER DEFENDANTS ...........................9

    B. STANDARD FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION ............10

    C. PLAINTIFF WILL LIKELY SUCCEED ON THE MERITS .............................................................11

       *i.*   *Plaintiff Is Likely to Succeed on Its Design Patent Infringement Claim* .......................11

    D. There Is No Adequate Remedy at Law and Plaintiff Will Suffer Irreparable

       HARM IN THE ABSENCE OF PRELIMINARY RELIEF................................................................12

    E. THE BALANCING OF HARMS TIPS IN PLAINTIFF'S FAVOR ....................................................13

    F. ISSUANCE OF THE INJUNCTION IS IN THE PUBLIC INTEREST .................................................13

IV.  THE EQUITABLE RELIEF SOUGHT IS APPROPRIATE................................................14

    A. A TEMPORARY RESTRAINING ORDER IMMEDIATELY ENJOINING DEFENDANTS'

       UNAUTHORIZED AND UNLAWFUL USE OF PLAINTIFF'S DESIGN IS APPROPRIATE..................14

    B. PREVENTING THE FRAUDULENT TRANSFER OF ASSETS IS APPROPRIATE ...............................15

    C. PLAINTIFF IS ENTITLED TO EXPEDITED DISCOVERY .............................................................16

V.   A BOND SHOULD SECURE THE INJUNCTIVE RELIEF..............................................17

VI.  CONCLUSION ................................................................................................................18

# TABLE OF AUTHORITIES

## Cases

*Abbott Labs. v. Mead Johnson & Co.*,
   971 F.2d 6, 11 (7th Cir. 1992) ......................................................................... 11

*Abercrombie & Fitch Trading Co. v. 4cheapbags.com*,
   No. 1:12-cv-21088 (S. D. Fla. April 4, 2012) (unpublished)........................18

*Animale Grp. Inc. v. Sunny's Perfume Inc.*,
   256 F. App'x 707, 709 (5th Cir. 2007) ........................................................... 15

*Charter Nat'l Bank & Trust v. Charter One Fin., Inc.*,
   No. 1:01-cv-00905, 2001 WL 527404, *1 (N.D. Ill. May 15, 2001)............. 11

*Coach, Inc., et al. v. Does 1-100*,
   No. 1:12-cv-8963 (N.D. Ill. Nov. 15, 2012) (unpublished) ......................17-18

*Columbia Pictures Indus., Inc. v. Jasso*,
   927 F. Supp. 1075, 1077 (N.D. Ill. 1996) ......................................................... 9

*Competitive Edge, Inc. v. Staples, Inc.*,
   763 F. Supp. 2d 997, 1011 (N.D. Ill. 2010) .................................................... 12

*Deckert v. Independence Shares Corp.*,
   311 U.S. 282 (1940)......................................................................................... 18

*Egyptian Goddess, Inc. v. Swisa, Inc.*,
   543 F.3d 665, 672 (Fed. Cir. 2008)................................................................. 12

*Eli Lilly & Co. v. Natural Answers, Inc.*,
   233 F.3d 456, 461, 462, 469 (7th Cir. 2000) .................................................. 11

*Gateway Eastern Railway Co. v. Terminal Railroad Assoc. of St. Louis*,
   35 F.3d 1134, 1140 (7th Cir. 1994) ................................................................ 13

*Gillespie v. Civiletti*,
   629 F.2d 637, 642 (9th Cir. 1980) .................................................................. 16

*Helene Curtis Industries, Inc. v. Church & Dwight Co., Inc.*,
   560 F.2d 1325, 1332 (7th Cir. 1977) .............................................................. 12

*Hoechst Diafoil Co. v. Nan Ya Plastics Corp.*,
   174 F.3d 411, 421 (4th Cir. 1999); Fed. R. Civ. P. 65(c) ............................... 17

*Ideal Indus., Inc. v. Gardner Bender, Inc.*,
   612 F.2d 1018, 1026 (7th Cir. 1979)……………………………………………...12

*Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*,
   51 F.3d 982, 987 (11th Cir. 1995) ..................................................... 15

*Oakley, Inc. v. Does 1-100*,
   No. 12-cv-9864 (N.D. Ill. Dec. 14, 2012) (unpublished)..................... 17

*Oppenheimer Fund, Inc. v. Sanders*,
   437 U.S. 340, 351, 98 S.Ct. 2380 (1978).......................................... 16

*Promatek Industries, Ltd. v. Equitrac Corp.*,
   300 F.3d 808, 813 (7th Cir. 2002) ................................................ 12-13

*Purdue Research Found. v. Sanofi-Sythelabo, S.A.*,
   338 F.3d 773, 782 (7th Cir. 2003) ..................................................... 10

*Rathmann Grp. v. Tanenbaum*,
   889 F.2d 787, 789 (8th Cir. 1989) ..................................................... 17

*Reebok Int'l Ltd. v. Marnatech Enters., Inc.*,
   970 F.2d 552, 559 (9th Cir. 1992) ..................................................... 15

*Tory Burch LLC v. Zhong Feng, et al.*,
   No. 1:12-cv-09066 (N.D. Ill. Nov. 15, 2012) (unpublished) ............... 17

*True Religion Apparel, Inc. v. Does 1-100*,
   No. 12-cv-9894 (N.D. Ill. Dec. 20, 2012) (unpublished)..................... 17

*Ty, Inc. v. The Jones Group, Inc.*,
   237 F.3d 891, 895 (7th Cir. 2001) ................................................. 11,13

*uBID, Inc. v. GoDaddy Group, Inc.*
   623 F.3d 421, 423 (7th Cir. 2010) ..................................................... 10

*Vance v. Rumsfeld*,
   No. 1:06-cv-06964, 2007 WL 4557812, *6 (N.D. Ill. Dec. 21, 2007) .......................................... 16

Statutes

28 U.S.C. § 1331 ........................................................................................ 9

28 U.S.C. § 1391 ........................................................................................ 9

28 U.S.C. §§ 1338(a)-(b) ........................................................................... 9

35 U.S.C. § 1 et. seq. .................................................................................. 9

35 U.S.C. § 271(a) ................................................................................................... 11-12

Fed. R. Civ. P. 26(b)(2) .............................................................................................. 16

Fed. R. Civ. P. 65 ....................................................................................................... 14

Fed. R. Civ. P. 65(c)..................................................................................................17

Fed. R. Civ. P. 65(b) ............................................................................................. 8, 15

Fed. R. Civ. P. 65(d)(2)(C) ................................................................................. 14, 17

Fed. R. Civ. P.65(b)(1)................................................................................................ 13

<u>**MEMORANDUM OF LAW**</u>

**I.  INTRODUCTION AND SUMMARY OF ARGUMENT**

Plaintiff brings this action against the defendants identified in Schedule A to the Complaint (collectively, the "Defendants") for design patent infringement (Count I). As alleged in the Complaint, Defendants are promoting, advertising, marketing, distributing, offering for sale, and selling counterfeit products in connection with Plaintiff's patented design (collectively, the "Counterfeit CASIO Products"), through various fully interactive commercial Internet websites operating under at least the Defendant Domain Names and Online Marketplace Accounts listed in Schedule A to the Complaint (collectively, the "Defendant Internet Stores"). In short, Defendants run a counterfeiting operation with disregard for anything except generating profits.

The Defendants create numerous Defendant Internet Stores with an intent to have them appear to be selling genuine products, while actually selling unauthorized and unlicensed Counterfeit CASIO Products to unknowing consumers. The Defendant Internet Stores share unique identifiers, such as design elements and similarities of the counterfeit products offered for sale, establishing a logical relationship between them and suggesting that Defendants' counterfeiting operation arises out of the same transaction, occurrence, or series of transactions or occurrences. Defendants attempt to avoid liability by concealing both their identities and the full scope and interworking of their counterfeiting operation. Plaintiff has filed this action to combat Defendants' infringement and counterfeiting of Plaintiff's patented design as well as to protect unknowing consumers from purchasing Counterfeit CASIO Products over the Internet.

This Court has personal jurisdiction over Defendants because each Defendant targets Illinois residents and has offered to sell and, on information and belief, has sold and continues to

1

sell Counterfeit CASIO Products to consumers within the United States, including the State of Illinois. Specifically, Defendants are reaching out to do business with Illinois residents by operating one or more commercial, interactive Internet Stores through which Illinois residents can purchase products being sold in connection with Plaintiff's CASIO Design. Defendants directly target unlawful business activities toward consumers in Illinois, cause harm to Plaintiff's business within this Judicial District, and have caused and will continue to cause irreparable injury to Plaintiff. Defendants deceive the public by trading upon Plaintiff's reputation and goodwill by using their commercial, interactive Internet Stores to sell and/or offer for sale unlicensed Counterfeit CASIO Products in connection with Plaintiff's CASIO Design.

Defendants' ongoing unlawful activities should be restrained, and Plaintiff respectfully requests that this Court issue an *ex parte* a Temporary Restraining Order. Specifically, Plaintiff seeks an order: (1) temporarily restraining Defendants' continued manufacture, importation, distribution, offering for sale, and sale of Counterfeit CASIO Products; (2) temporarily restraining Defendants' assets to preserve Plaintiff's right to an equitable accounting. Ancillary to and as part of the TRO, Plaintiff respectfully requests that this Court (3) authorize expedited discovery allowing Plaintiff to inspect and copy Defendants' records relating to the manufacture, distribution, offering for sale, and sale of Counterfeit CASIO Products and Defendants' financial accounts.

In light of the covert nature of offshore counterfeiting activities and the vital need to establish an economic disincentive for design patent infringement, Plaintiff demonstrates a significant need for the issuance of such orders.

Plaintiff's well-pleaded factual allegations, which must be accepted as true, and evidence submitted through declarations, establishes that issuing a temporary restraining order against

Defendants is necessary and proper. Plaintiff can demonstrate a strong likelihood of success on the merits. Plaintiff is the owner of the CASIO Design Patent at issue (the "CASIO Design"). Defendants' use of Plaintiff's Design to sell Counterfeit CASIO Products is causing consumer confusion.

In addition, Defendants have and continue to irreparably harm Plaintiff through diminished goodwill and damage to Plaintiff's reputation. Monetary damages are inadequate to Plaintiff for these damages. This makes injunctive relief particularly appropriate in this matter.

Issuance of an injunction is also in the public interest because it will prevent confusion among the public and prevent unknowing consumers from being deceived into purchasing Counterfeit CASIO Products.

In addition, an order authorizing the transfer of the Defendant Domain Names to Plaintiff's control so that the continued use of the domains in carrying out acts of infringement can be temporarily disabled. Moreover, under Federal Rule of Civil Procedure 65(d)(2)(C), this Court has the power to bind any third parties, such as domain name registries and financial institutions, who are in active concert with the Defendants or who aid and abet Defendants and are given actual notice of the order. Similarly, a prejudgment asset freeze is also proper since Plaintiff seeks an equitable remedy in the accounting of Defendants' profits.

## II. STATEMENT OF FACTS

### A. Plaintiff's Design and Products

Plaintiff is in the business of developing, marketing, selling and distributing CASIO brand products. *See* Declaration of Hideyuki Kiuchi (the "Kiuchi Declaration") at ¶¶ 3-4. Plaintiff has expended substantial time, money and other resources promoting CASIO brand

products. *Id.* at ¶ 9.

CASIO Products are known for their distinctive patented designs. *Id.* at ¶ 5. These designs are broadly recognized by consumers. *Id.* Electronic calculators embodying this design are associated with the quality and innovation that the public has come to expect from CASIO Products. *Id.* A true and correct copy of the U.S. Design Patent for the CASIO Design at issue is attached to the Kiuchi Declaration as Exhibit 1.

Plaintiff has expended substantial time, money, and other resources in developing, advertising, and otherwise promoting the CASIO Design. *Id.* at ¶ 9.  As a result, products bearing the CASIO Design are widely recognized and exclusively associated by consumers, the public, and the trade as being products sourced from Plaintiff. *Id.*

**B.      Defendants' Unlawful Activities**

The success of CASIO brand has resulted in those products being counterfeited. *Id. at* ¶ 10. Plaintiff has identified numerous domain names linked to fully interactive websites and marketplace listings on platforms such as eBay, Amazon, Alipay, Alibaba and DHgate, including the Defendants Internet Stores, which were offering for sale, selling, and importing Counterfeit CASIO Products to consumers in this Judicial District and throughout the United States. *Id.* Internet websites like the Defendants' Internet Stores are estimated to receive tens of millions of visits per year and to generate over $135 billion in annual online sales. Declaration of Michael A. Hierl (the "Hierl" Declaration) at ¶ 2. According to an intellectual property rights seizures statistics report issued by Homeland Security, the manufacturer's suggested retail price (MSRP) of goods seized by the U.S. government during 2017 exceeded $1.2 billion. *Id.* at ¶ 3. Internet websites like the Defendants' Internet Stores are also estimated to contribute to tens of thousands of lost jobs for legitimate businesses and broader economic damages such as lost tax revenue every year. *Id.* at ¶ 4.

4

i.       Defendants Operate Legitimate-Looking Internet Stores

Upon information and belief, Defendants facilitate sales by designing the Defendants' Internet Stores so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers selling genuine CASIO Products. Kiuchi Declaration at ¶ 12. Many of the Defendants' Internet Stores look sophisticated and accept payment in U.S. dollars via credit cards, eBay, Amazon, Alipay, Alibaba and DHgate. *Id.* Defendants' Internet Stores often include images and design elements that make it very difficult for consumers to distinguish such counterfeit sites from an authorized website. *Id.* Defendants further perpetuate the illusion of legitimacy by offering "live 24/7" customer service and using indicia of authenticity and security that consumers have come to associate with authorized retailers, including the McAfee® Security, VeriSign®, Visa®, MasterCard® and PayPal logos. *Id.* Plaintiff has not licensed or authorized Defendants to use the CASIO Design and none of the Defendants are authorized retailers of genuine CASIO Products. *Id*.

ii.      Defendants Illegitimately Optimize the Defendants' Internet Stores for Search Engines

Upon information and belief, Defendants also deceive unknowing consumers by using the CASIO Design without authorization within the content, text, and/or meta tags of their websites in order to attract various search engines crawling the Internet looking for websites relevant to consumer searches for CASIO Products. *Id.* at ¶ 13. Additionally, upon information and belief, Defendants use other unauthorized search engine optimization (SEO) tactics and social media spamming so that the Defendants' Internet Stores listings show up at or near the top of relevant search results and misdirect consumers searching for genuine CASIO Products. *Id.* Further, Defendants utilize similar illegitimate SEO tactics to propel new domain names to the top of search results after others are shut down. *Id.* As such, Plaintiff also seeks to disable

Defendants' Domain Names owned by Defendants that are the means by which the Defendants could continue to sell Counterfeit CASIO Products.

      iii.    <u>Defendants Use Fictitious Aliases and Common Tactics to Evade Shut Down</u>

Defendants go to great lengths to conceal their identities and often use multiple fictitious names and addresses to register and operate their network of Defendants' Internet Stores. *Id.* at ¶ 14. For example, many of Defendants' names and physical addresses used to register the Defendants' Domain Names are incomplete, contain randomly typed letters, or fail to include cities or states. Other Defendants' Domain Names use privacy services that conceal the owners' identity and contact information. Upon information and belief, Defendants regularly create new websites and online marketplace accounts on various platforms using the identities listed in Schedule A to the Complaint, as well as other unknown fictitious names and addresses. *Id.* Such Defendants' Internet Store registration patterns are one of many common tactics used by the Defendants to conceal their identities, the full scope and interworking of their counterfeiting operation, and to avoid being shut down. *Id.*

Even though Defendants operate under multiple fictitious names, there are numerous similarities among the Defendants' Internet Stores. *Id.* at ¶ 15. For example, many of the Defendants' websites have virtually identical layouts, even though different aliases were used to register the respective domain names. In addition, Counterfeit CASIO Products for sale in the Defendants' Internet Stores bear similar indicia of being counterfeit to one another, suggesting that the Counterfeit CASIO Products were manufactured by and come from a common source and that, upon information and belief, Defendants are interrelated. *Id.* The Defendants' Internet Stores also include other notable common features, including use of the same domain name registration patterns, unique shopping cart platforms, accepted payment methods, check-out methods, meta data, illegitimate SEO tactics, HTML user-defined variables, domain redirection,

lack of contact information, identically or similarly priced items and volume sales discounts, the same incorrect grammar and misspellings, similar hosting services, similar name servers, and the use of the same text and images. *Id.*

In addition to operating under multiple fictitious names, Defendants in this case and defendants in other similar cases against online counterfeiters use a variety of other common tactics to evade enforcement efforts. *Id.* at ¶ 16. For example, counterfeiters like Defendants will often register new domain names or online marketplace accounts under new aliases once they receive notice of a lawsuit. *Id.* Counterfeiters also often move website hosting to rogue servers located outside the United States once notice of a lawsuit is received. Rogue servers are notorious for ignoring take down demands sent by brand owners. *Id.* Counterfeiters also typically ship products in small quantities via international mail to minimize detection by U.S. Customs and Border Protection. *Id.* A 2017 Homeland Security report on seizure statistics indicated that the Internet has fueled a "sharp increase" in the number of small packages of counterfeit goods shipped through the mail and express carriers. Hierl Declaration at ¶ 3.

Further, counterfeiters such as Defendants typically operate multiple credit card merchant accounts and eBay, Amazon, Alipay, Alibaba and DHgate accounts behind layers of payment gateways so that they can continue operation. Kiuchi Declaration at ¶ 17. Upon information and belief, Defendants maintain off-shore bank accounts and regularly move funds from their accounts to off-shore bank accounts outside the jurisdiction of this Court. *Id*. *See also,* Hierl Declaration at ¶ 7. Indeed, analysis of transaction logs from similar cases brought by other patent owners indicates that off-shore counterfeiters regularly move funds from their U.S. accounts to bank accounts outside the jurisdiction of this Court. Hierl Declaration at ¶ 9.

Plaintiff's well-pleaded allegations regarding registration patterns, similarities among the Defendants' Internet Stores and the Counterfeit CASIO Products for sale thereon, and common

7

tactics employed to evade enforcement establish a logical relationship among the Defendants suggesting that Defendants are an interrelated group of counterfeiters. Upon information and belief, Defendants are working in active concert to knowingly and willfully manufacture, import, distribute, offer for sale, and sell products in connection with counterfeit versions of the CASIO Design in the same transaction, occurrence, or series of transactions or occurrences. As indicated above, the tactics used by Defendants to conceal their identities and the full scope of their counterfeiting operation make it virtually impossible for Plaintiff to discover the true identities of the Defendants, the exact interworking of the Defendants' counterfeit network, and the relationship among Defendants. In the event that Defendants provide additional credible information regarding their identities, Plaintiff will take appropriate steps to amend the Complaint.

## III.     ARGUMENT

Defendants' purposeful, intentional, and unlawful conduct is causing and will continue to cause irreparable harm to Plaintiff's reputation and the goodwill associated with the CASIO Design. To stop Defendants' sale of Counterfeit CASIO Products, Plaintiff respectfully requests that this Court issue a temporary restraining order ordering, and the freezing of Defendants' assets. Without the relief requested by Plaintiff's instant Motion, Defendants' unlawful activity will continue unabated, and Plaintiff and consumers will suffer irreparable harm.

Rule 65(b) of the Federal Rules of Civil Procedure provides that the Court may issue an *ex parte* temporary restraining order where immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or that party's attorney can be heard in opposition. Fed. R. Civ. P. 65(b). The Defendants here fraudulently promote, advertise, offer to sell, and sell goods in connection with counterfeits of the CASIO Design via the Defendants' Internet Stores. Defendants are creating a false association in the minds of consumers between

the Defendants and Plaintiff by deceiving consumers into believing that the Counterfeit CASIO Products for sale on Defendants' websites are sponsored or endorsed by Plaintiff. The entry of a temporary restraining order is appropriate because it would immediately stop the Defendants from benefiting from their wrongful use of the CASIO Design and preserve the status quo until such time as a hearing can be held.

In the absence of a temporary restraining order without notice, the Defendants can and likely will modify registration data and content, change hosts, redirect traffic to other websites in their control, and move any assets from U.S.-based bank accounts, including eBay, Amazon, Alipay, Alibaba and DHgate accounts. Courts have recognized that civil actions against counterfeiters present special challenges that justify proceeding on an *ex parte* basis. S*ee Columbia Pictures Indus., Inc. v. Jasso*, 927 F. Supp. 1075, 1077 (N.D. Ill. 1996) (observing that "proceedings against those who deliberately traffic in infringing merchandise are often useless if notice is given to the infringers"). As such, Plaintiff respectfully requests that this Court issue the requested *ex parte* temporary restraining order. This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Patent Act, 35 U.S.C. § 1 et seq., 28 U.S.C. §§ 1338(a)-(b), and 28 U.S.C. § 1331.  Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

### A.  This Court May Exercise Personal Jurisdiction over Defendants

This Court may properly exercise personal jurisdiction over Defendants since Defendants directly target business activities toward consumers in the United States, including Illinois, by directly offering for sale products into this Judicial District as well as through at least the fully interactive, commercial Defendant Internet Stores. Specifically, Defendants are reaching out to do business with Illinois residents by operating one or more commercial, interactive Defendants' Internet Stores through which Illinois residents can purchase products bearing counterfeit

versions of the CASIO Design. Each Defendant has targeted sales from Illinois residents by operating online stores that offer shipping to the United States, including Illinois, and has offered to sell, and on information and belief, has sold and continues to sell Counterfeit CASIO Products to consumers within the United States, including the State of Illinois. *See* Complaint at ¶¶ 2, 29 and 30. Without the benefit of an evidentiary hearing, plaintiff bears only the burden of making a prima facie case for personal jurisdiction; all of Plaintiff's asserted facts should be accepted as true and any factual determinations should be resolved in its favor. *See uBID, Inc. v. GoDaddy Group, Inc.* 623 F.3d 421, 423 (7th Cir. 2010); *see also*, *Purdue Research Found. v. Sanofi-Sythelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003) ("When determining whether a plaintiff has met his burden, jurisdictional allegations pleaded in the complaint are accepted as true unless proved otherwise by defendants' affidavits or exhibits.").

Through at least the fully interactive commercial Internet websites operating under the Defendant Domain Names and the marketplace listings operated using the Online Marketplace Accounts, each of the Defendants has targeted sales from Illinois residents by offering shipping to the United States, including Illinois, and, on information and belief, has sold or offered to sell Counterfeit CASIO Products to residents of the United States, including Illinois. Each of the Defendants is committing tortious acts in Illinois, engaging in interstate commerce, and has wrongfully caused Plaintiff substantial injury in the State of Illinois.

**B. Standard for Temporary Restraining Order and Preliminary Injunction**

District Courts within this Circuit hold that the standard for granting a temporary restraining order and the standard for granting a preliminary injunction are identical. *See, e.g. Charter Nat'l Bank & Trust v. Charter One Fin., Inc.*, No. 1:01-cv-00905, 2001 WL 527404, *1 (N.D. Ill. May 15, 2001). A party seeking to obtain a preliminary injunction must demonstrate: (1) that its case has some likelihood of success on the merits; (2) that no adequate remedy at law

10

exists; and (3) that it will suffer irreparable harm if the injunction is not granted. *See Ty, Inc. v. The Jones Group, Inc.*, 237 F.3d 891, 895 (7th Cir. 2001).

If the Court is satisfied that these three conditions have been met, then it must consider the harm that the nonmoving party will suffer if preliminary relief is granted, balancing such harm against the irreparable harm the moving party will suffer if relief is denied. *Id.* Finally, the Court must consider the potential effect on the public interest (non-parties) in denying or granting the injunction. *Id.* The Court then weighs all of these factors, "sitting as would a chancellor in equity," when it decides whether to grant the injunction. *Id.* (quoting *Abbott Labs. v. Mead Johnson & Co.,* 971 F.2d 6, 11 (7th Cir. 1992)). This process involves engaging in what the Court has deemed "the sliding scale approach" – the more likely the plaintiff will succeed on the merits, the less the balance of harms need favor the plaintiff's position. *Id*. The sliding scale approach is not mathematical in nature, rather "it is more properly characterized as subjective and intuitive, one which permits district courts to weigh the competing considerations and mold appropriate relief." *Id.* at 895-896. The greater the movant's likelihood of succeeding on the merits, the less the balancing of harms need be in his favor. *See Eli Lilly & Co. v. Natural Answers, Inc.,* 233 F.3d 456, 461 (7th Cir. 2000).

### C. Plaintiff Will Likely Succeed on the Merits

#### i. Plaintiff Is Likely to Succeed on Its Design Patent Infringement Claim

The United States Patent Act provides that "whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor, infringes the patent." 35 U.S.C. § 271(a). In this case, CASIO is the owner of the CASIO Design. Kiuchi Declaration at ¶ 5. CASIO has submitted extensive documentation showing that Defendants make, use, offer for sale, sell, and/or import into the United States for subsequent sale or use the same product that

11

infringes directly and/or indirectly the patented design claimed in the CASIO Design Patent. *Id.* at ¶ 11. The documentation submitted by CASIO shows that an ordinary observer would be deceived into thinking that the Infringing Product was the same as the CASIO Design. *Competitive Edge, Inc. v. Staples, Inc.*, 763 F. Supp. 2d 997, 1011 (N.D. Ill. 2010) (citing *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 672 (Fed. Cir. 2008)). Finally, CASIO has not licensed or authorized Defendants to use the CASIO Design, and none of the Defendants are authorized retailers of genuine CASIO Products. Kiuchi Declaration at ¶ 12. Accordingly, CASIO is likely to succeed on its claim for design patent infringement.

### D. There Is No Adequate Remedy at Law and Plaintiff Will Suffer Irreparable Harm in the Absence of Preliminary Relief

Defendants' unauthorized use of the CASIO Design has and continues to irreparably harm Plaintiff through diminished goodwill and brand confidence, damage to Plaintiff's reputation, loss of exclusivity, and loss of future sales. Kiuchi Declaration at ¶¶ 18-22.

Irreparable injury "almost inevitably follows" when there is a high probability of confusion because such injury "may not be fully compensable in damages." *Helene Curtis Industries, Inc. v. Church & Dwight Co., Inc.*, 560 F.2d 1325, 1332 (7th Cir. 1977). As such, monetary damages are likely to be inadequate compensation for such harm. *Ideal Indus., Inc. v. Gardner Bender, Inc.,* 612 F.2d 1018, 1026 (7th Cir. 1979).

The extent of the harm to Plaintiff's reputation and goodwill and the possible diversion of customers due to loss in brand confidence are both irreparable and incalculable, thus warranting an immediate halt to Defendants' infringing activities through injunctive relief. *See Promatek Industries, Ltd. v. Equitrac Corp.,* 300 F.3d 808, 813 (7th Cir. 2002) (Finding that damage to plaintiff's goodwill was irreparable harm for which plaintiff had no adequate remedy at law); *Gateway Eastern Railway Co. v. Terminal Railroad Assoc. of St. Louis,* 35 F.3d 1134, 1140 (7th

Cir. 1994) ("[S]howing injury to goodwill can constitute irreparable harm that is not compensable by an award of money damages."). Plaintiff will suffer immediate and irreparable injury, loss, or damage if an *ex parte* Temporary Restraining Order is not issued in accordance with Federal Rule of Civil Procedure 65(b)(1). Kiuchi Declaration at ¶ 23. As such, Plaintiff should be granted preliminary relief.

### E. The Balancing of Harms Tips in Plaintiff's Favor

As noted above, if the Court is satisfied that Plaintiff has demonstrated (1) a likelihood of success on the merits, (2) no adequate remedy at law, and (3) the threat of irreparable harm if preliminary relief is not granted, then it must next consider the harm that Defendants will suffer if preliminary relief is granted, balancing such harm against the irreparable harm Plaintiff will suffer if relief is denied. *Ty, Inc.*, 237 F.3d at 895.

Defendants are entitled to little equitable consideration because they are willful infringers. As Plaintiff has demonstrated, Defendants have been profiting from the sale of counterfeit CASIO Products. Thus, the balance of equities tips decisively in Plaintiff's favor. As such, equity requires that Defendants be ordered to cease their unlawful conduct.

### F. Issuance of the Injunction Is in the Public Interest

An injunction in these circumstances is in the public interest because it will prevent consumer confusion and stop Defendants from violating patent law. The public is currently under the false impression that Defendants are operating their Defendants' internet stores with Plaintiff's approval and endorsement. An injunction serves the public interest in this case.

In this case, the injury to the public is significant, and the injunctive relief that Plaintiff seeks is specifically intended to remedy that injury by dispelling the public confusion created by Defendants' actions. The public has the right not to be confused and defrauded as to the source of the goods and services offered by Defendants, or as to the identity of the owner of the CASIO

Design used in connection with those goods and services. Unless Defendants' unauthorized use of the CASIO Design is enjoined, the public will continue to be confused and misled by Defendants' conduct.

For these reasons, it is respectfully submitted that granting Plaintiff's Motion for Entry of a Temporary Restraining Order is in the public interest.

## IV.    THE EQUITABLE RELIEF SOUGHT IS APPROPRIATE

In addition to this Court's inherent authority to issue injunctive relief, Rule 65(b) of the Federal Rules of Civil Procedure provides that a court may issue a temporary restraining order without notice where facts show that the movant will suffer immediate and irreparable injury, loss, or damage before the adverse party can be heard in opposition. Moreover, under Federal Rule of Civil Procedure 65(d)(2)(C), this Court has the power to bind any third parties, such as domain name registries and financial institutions, who are in active concert with the Defendants or who aid and abet Defendants and are given actual notice of the order. Fed. R. Civ. P. 65. The facts in this case warrant such relief.

### A.    A Temporary Restraining Order Immediately Enjoining Defendants' Unauthorized and Unlawful Use of Plaintiff's Design Is Appropriate

Plaintiff requests a temporary injunction requiring the Defendants to immediately cease all use of the CASIO Design or substantially similar designs on or in connection with all Defendants' Internet Stores. Such relief is necessary to stop the ongoing harm to the CASIO Design and associated goodwill, as well as harm to consumers, and to prevent the Defendants from continuing to benefit from their unauthorized use of the Design.

The need for *ex parte* relief is magnified in today's global economy where counterfeiters can operate over the Internet in an anonymous fashion. Plaintiff is currently unaware of both the

14

true identities and locations of the Defendants, as well as other Defendant Internet Stores used to distribute Counterfeit CASIO Products.

**B.     Preventing the Fraudulent Transfer of Assets Is Appropriate**

Plaintiff requests an *ex parte* restraint of Defendants' assets so that Plaintiff's right to an equitable accounting of Defendants' profits from sales of Counterfeit CASIO Products is not impaired. Issuing an *ex parte* restraint will ensure Defendants' compliance. If such a restraint is not granted in this case, Defendants may disregard their responsibilities and fraudulently transfer financial assets to overseas accounts before a restraint is ordered. Specifically, upon information and belief, the Defendants in this case hold most of their assets in China, making it easy to hide or dispose of assets, which will render an accounting by Plaintiff meaningless.

Courts have the inherent authority to issue a prejudgment asset restraint when plaintiff's complaint seeks relief in equity. *Animale Grp. Inc. v. Sunny's Perfume Inc.*, 256 F. App'x 707, 709 (5th Cir. 2007); *Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 987 (11th Cir. 1995); *Reebok Int'l Ltd. v. Marnatech Enters., Inc.*, 970 F.2d 552, 559 (9th Cir. 1992). In addition, Plaintiff has shown a strong likelihood of succeeding on the merits of its patent infringement and deceptive trade practices act claims, Plaintiff's Complaint seeks, among other relief, that Defendants account for and pay to Plaintiff all profits realized by Defendants by reason of Defendants' unlawful acts. Therefore, this Court has the inherent equitable authority to grant Plaintiff's request for a prejudgment asset freeze to preserve the relief sought by Plaintiff.

In addition, courts in this district and across the country regularly issue asset-restraining orders for entire financial accounts in cases involving the sale of counterfeit products.

Plaintiff has shown a likelihood of success on the merits, an immediate and irreparable harm suffered as a result of Defendants' activities, and that, unless Defendants' assets are frozen, Defendants will likely hide or move their ill-gotten funds to offshore bank accounts.

15

Accordingly, the granting of an injunction preventing the transfer of Defendants' assets is proper.

### C.     Plaintiff Is Entitled to Expedited Discovery

The Supreme Court has held that "federal courts have the power to order, at their discretion, the discovery of facts necessary to ascertain their competency to entertain the merits." *Vance v. Rumsfeld*, No. 1:06-cv-06964, 2007 WL 4557812, *6 (N.D. Ill. Dec. 21, 2007) (quoting *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 351, 98 S. Ct. 2380 (1978)). A district court has wide latitude in determining whether to grant a party's request for discovery. *Id.* Furthermore, courts have broad power over discovery and may permit discovery in order to aid in the identification of unknown defendants. *See* Fed. R. Civ. P. 26(b)(2); *Gillespie v. Civiletti,* 629 F.2d 637, 642 (9th Cir. 1980).

As described above, Defendants are using third-party payment processors such as Visa and eBay, Amazon, Alipay, Alibaba and DHgate, which helps to increase their anonymity by interposing a third party between the consumer and Defendants. Without being able to discover Defendants' bank and payment system accounts, any asset restraint would be of limited value because Plaintiff would not know the entities upon whom to serve the order.

Plaintiff respectfully requests expedited discovery to discover bank and payment system accounts Defendants use for their counterfeit sales operations. The discovery requested on an expedited basis in Plaintiff's Proposed Temporary Restraining Order has been limited to include only what is essential to prevent further irreparable harm. Discovery of these financial accounts so that they can be frozen is necessary to ensure that these activities will be contained.

Under Federal Rule of Civil Procedure 65(d)(2)(C), this Court has the power to bind any third party who is in active concert with the Defendants that is given notice of the order to provide expedited discovery in this action. Fed. R. Civ. P. 65(d)(2)(C). Plaintiff's counsel is

aware that the same third parties, in previous lawsuits, have worked with patent owners and is not aware of any reason that Defendants or third parties cannot comply with these expedited discovery requests without undue burden. Further, all relevant third parties have in fact complied with identical requests in previous similar cases. More importantly, as Defendants have engaged in many deceptive practices in hiding their identities and accounts, Plaintiff's seizure and asset restraint in the Temporary Restraining Order may have little meaningful effect without the requested relief. Accordingly, Plaintiff respectfully requests that expedited discovery be granted.

## V.    A BOND SHOULD SECURE THE INJUNCTIVE RELIEF

The posting of security upon issuance of a temporary restraining order or preliminary injunction is vested in the Court's sound discretion. *Rathmann Grp. v. Tanenbaum,* 889 F.2d 787, 789 (8th Cir. 1989); *Hoechst Diafoil Co. v. Nan Ya Plastics Corp.,* 174 F.3d 411, 421 (4th Cir. 1999); Fed. R. Civ. P. 65(c). Because of the strong and unequivocal nature of Plaintiff's evidence of counterfeiting, infringement, and unfair competition, Plaintiff respectfully requests that this Court require Plaintiff to post a bond of no more than Ten Thousand U.S. Dollars ($10,000.00). *See, e.g., Oakley, Inc. v. Does 1-100,* No. 12-cv-9864 (N.D. Ill. Dec. 14, 2012) (unpublished) ($10,000 bond); *True Religion Apparel, Inc. v. Does 1-100,* No. 12-cv-9894 (N.D. Ill. Dec. 20, 2012) (unpublished) ($10,000 bond); *Tory Burch LLC v. Zhong Feng, et al.*, No. 1:12-cv-09066 (N.D. Ill. Nov. 15, 2012) (unpublished) ($10,000 bond); *Coach, Inc., et al. v. Does 1-100,* No. 1:12-cv-8963 (N.D. Ill. Nov. 15, 2012) (unpublished) ($10,000 bond); *Deckers Outdoor Corp. v. Does 1-1,281,* No. 1:12-cv-01973 (N.D. Ill. Apr. 4, 2012) (unpublished) ($10,000 bond)*; Abercrombie & Fitch Trading Co. v. 4cheapbags.com,* No. 1:12-cv-21088 (S. D. Fla. June 6, 2012) (unpublished) ($10,000 bond).

## VI.    CONCLUSION

Plaintiff's business, its CASIO brand, and consumers are being irreparably harmed. Without entry of the requested relief, the sale of Counterfeit CASIO Products will continue to lead prospective purchasers and others to believe that Defendants' products have been manufactured by or emanate from Plaintiff. Therefore, entry of an *ex parte* order is necessary to protect Plaintiff's design patent rights, to prevent further harm to Plaintiff and the consuming public, and to preserve the status quo. In view of the foregoing and consistent with previous similar cases, Plaintiff respectfully requests that this Court enter a Temporary Restraining Order in the form submitted herewith and set a status hearing before the expiration of the Temporary Restraining Order at which hearing Plaintiff intends to present a motion for preliminary injunction.

Respectfully submitted,

Dated:  February 14, 2023

By:    s/Michael A. Hierl
Michael A. Hierl (Bar No. 3128021)
William B. Kalbac (Bar No. 6301771)
Robert P. McMurray (Bar No. 6324332)
Hughes Socol Piers Resnick & Dym, Ltd.
Three First National Plaza
70 W. Madison Street, Suite 4000
Chicago, Illinois 60602
(312) 580-0100 Telephone
mhierl@hsplegal.com

Attorneys for Plaintiff
Casio Computer Co., Ltd.

18

**CERTIFICATE OF SERVICE**

The undersigned attorney hereby certifies that a true and correct copy of the foregoing

Memorandum was filed electronically with the Clerk of the Court and served on all counsel of

record and interested parties via the CM/ECF system on February 14, 2023.


   s/Michael A. Hierl     

19