IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CASIO COMPUTER CO., LTD., ) | |
| ) | Case No. 23-cv-0895 |
| Plaintiff, ) | |
| ) | |
| v. ) | Judge Thomas M. Durkin |
| ) | |
| THE INDIVIDUALS, CORPORATIONS, ) | |
| LIMITED LIABILITY COMPANIES, ) | |
| PARTNERSHIPS AND UNINCORPORATED ) | |
| ASSOCIATIONS IDENTIFIED ON SCHEDULE ) | |
| A HERETO, ) | |
| ) | |
| Defendants. ) | |

## DECLARATION OF MICHAEL A. HIERL

I, Michael A. Hierl, of the City of Chicago, in the State of Illinois, declare as follows:

1. I am an attorney at law, duly admitted to practice before the Courts of the State of Illinois and the United States District Court for the Northern District of Illinois. I am one of the attorneys for Plaintiff CASIO COMPUTER CO., LTD. Except as otherwise expressly stated to the contrary, I have personal knowledge of the following facts and, if called as a witness, I could and would competently testify as follows:

2. According to a January 2011 Mark Monitor report entitled "Traffic Report: Online Piracy and Counterfeiting," the combined traffic to 48 sites selling counterfeit goods was more than 240,000 visits per day on average or more than 87 million visits per year. A 2012 Mark Monitor article entitled "White Paper: Seven Best Practices for Fighting Counterfeit Sales Online" reported that counterfeiters' illicit online activities will cost legitimate businesses $135 billion in lost revenue annually. True and correct copies of these reports are attached hereto as Exhibit 1.

3. According to an intellectual property rights seizures statistics reports issued by Homeland Security, the manufacturer's suggested retail price (MSRP) of goods seized by the U.S. government in 2017 exceeded $1.2 billion. The 2017 report noted that e-commerce sales, including those through third-party platforms resulted in a sharp increase in small packages into the U.S. annually, 260 million packages are shipped through the mail and 89% of all intellectual property rights seizures take place in the international mail and express environments. True and correct copies of these reports are attached hereto as <u>Exhibit 2</u>.

4. A February 2017 report commissioned by the International Trademark Association along with Business Action to stop counterfeiting and piracy released a report entitled "The Economic Impacts of Counterfeiting & Piracy" which found that in 2013 the estimated value of international and domestic trade in counterfeit and pirated goods was a staggering 1.13 trillion and by 2022 will be estimated $1.90 – 2.81 trillion, resulting in tens of thousands of lost jobs for legitimate businesses and broader economic losses, including lost tax revenue, of more than $125 billion every year. This figure is expected to increase each year. A true and correct copy of this report is attached hereto as <u>Exhibit 3</u>.

5. I understand that counterfeiters use a variety of tactics to evade enforcement efforts. Specifically, counterfeiters like Defendants in the present case will often register new domain names or online marketplace accounts under new aliases once they receive notice of a lawsuit.

6. Once notice of a lawsuit is received, counterfeiters frequently move website hosting to rogue servers located outside the United States and/or begin redirecting traffic to a different, newly created domain name not named in the corresponding lawsuit. Rogue servers are notorious for ignoring take down demands sent by brand owners.

7. I also understand that once notice of a lawsuit is received, counterfeiters such as Defendants move funds from their eBay, Amazon, Alipay, Alibaba and DHgate accounts to off-shore bank accounts outside the jurisdiction of this Court.

8. For these reasons, in the absence of an *ex parte* Order, Defendants could and likely would modify registration data and content, change hosts, redirect traffic to other websites in their control, and move any assets from accounts in U.S.-based financial institutions, including eBay, Amazon, Alipay, Alibaba and DHgate accounts, to offshore accounts.

9. Analysis of eBay, Amazon, Alipay, Alibaba and DHgate transaction logs from previous similar cases indicates that off-shore counterfeiters regularly move funds from U.S.-based eBay, Amazon, Alipay, Alibaba and DHgate accounts to China-based bank accounts outside the jurisdiction of this Court.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 14th day of February, 2023.

By: _____
Michael A. Hierl
Counsel for Plaintiff
CASIO COMPUTER CO., LTD.